IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DR. ALEXANDER CHI, ) ) Plaintiff, ) ) vs. ) ) LOYOLA UNIVERSITY MEDICAL ) CENTER and DR. SUNEEL NAGDA, ) ) Defendants. ) | Case No. 10 C 6292 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Dr. Alexander Chi has sued Loyola University Medical Center (Loyola Hospital) and Dr. Suneel Nagda for defamation, tortious interference with prospective economic advantage, intentional infliction of emotional distress (IIED), and negligent infliction of emotional distress (NIED). The Court has jurisdiction based on diversity of citizenship.

Defendants have moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). In considering the motion, the Court accepts the facts stated in the complaint as true and draws reasonable inferences in Dr. Chi's favor. *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir.2009). Dr. Chi is not required to make detailed factual allegations but must allege facts that "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

Dr. Chi alleges that he was employed at Loyola Hospital as a resident in its radiation oncology program from July 2005 through September 2009. Dr. Nagda is a

physician and a medical professor at the hospital. Dr. Chi alleges that during his employment at the hospital, he was subjected to mistreatment by co-workers and supervisors and (among other things) was at one point placed on academic probation, allegedly for no good reason. He alleges that Dr. Nagda, in particular, was unjustifiably hypercritical of him.

Dr. Chi alleges that he successfully completed his residency at Loyola in September 2009 and secured a position with University Medical Center (UMC) in Tucson, Arizona. Dr. Chi was certified to practice radiation oncology but needed someone from Loyola Hospital to fill out a form confirming he had successfully completed the hospital's residency program and had shown "sufficient ability to practice competently and independently in his specialty." Compl. ¶ 32. Dr. Chi alleges that at this point, "Dr. Nagda knew that Dr. Chi had accepted the position and moved to Arizona." *Id.* ¶ 33.

On September 30, 2009, Dr. Nagda provided the necessary confirmation of Dr. Chi's ability to practice competently and independently by completing the form. *Id.* ¶ 32. Dr. Nagda also noted, as the form required, that Dr. Chi had been subject to academic probation, which Dr. Nagda said "successfully remediated" the issue involved. Defs.' Mem., Ex. C at 1. Dr. Nagda elaborated in a section of the form for "comments" that "Dr. Chi has had difficulties in interpersonal communication throughout his residency. While he has improved to a degree which I find acceptable, I am concerned that he may encounter difficulties in the future." *Id.* at 2.

The allegedly actionable conduct by Dr. Nagda and Loyola came in a second form that Dr. Nagda filled out the next day, October 1, 2009. The form, which Dr. Chi

2

alleges that his new employer required, requested an evaluation of Dr. Chi on about two dozen parameters. Compl. ¶ 34. Dr. Nagda did not fill in this part of the form but instead wrote in, "Please see attached form," a reference to the September 30 form discussed above. The October 1 form also requested an "Overall Evaluation," to be provided by checking off one of the following six boxes:

- I recommend him/her as superior
- I recommend him/her as above average
- Recommend [sic] him/her as qualified & competent
- I recommend him/her, but with some reservation
- I cannot recommend him/her
- A personal phone call would be preferred

Defs.' Mem., Ex. D. Dr. Nagda checked off the box next to the phrase "I cannot recommend him/her." *Id.*; *see* Compl. ¶ 34.

Dr. Chi alleges that this was a "cheap shot" that caused him "tremendous emotional pain and suffering and public humiliation" and that it "had an immediate negative impact on Dr. Chi's' career and accompanying economic prospects." Compl. ¶ 36. Specifically, Dr. Chi alleges that "[a]s a direct result of Dr. Nagda's actions, the University Medical Center reduced Dr. Chi's guaranteed credentials by a year, which has the effect of reducing Dr. Chi's guaranteed employment by a year." *Id.* ¶ 37. He also alleges that the statement constitutes "a large red flag to potential employers that they should look elsewhere." *Id.* ¶ 38. According to Dr. Chi, "[t]here is no reasonable way to interpret Dr. Nagda's decision to state that he could not fully recommend Dr. Chi just a day after declaring that he was qualified and competent other than as a malicious

3

attack on Dr. Chi." *Id.* ¶ 39.

## Discussion

**1.     IIED claim**

The Court starts with the IIED claim. Whether conduct is extreme or outrageous is judged on an objective standard. It exists if an average member of the community, upon learning of the acts, would be aroused to resent the actor and would be led to exclaim, "Outrageous." *Id.* at 392, 641 N.E.2d at 506-07. "Such conduct must be differentiated from the mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities that are part of the costs of complex society from which the law provides no protection." *Id.* at 392, 641 N.E.2d at 507.

Defendants' motion assumes that Dr. Chi's IIED claim is premised just on Dr. Nagda's statements on the October 1, 2009 form. The reason is readily apparent: that is what Dr. Chi alleges in his complaint. *See* Compl. ¶ 55 ("By misrepresenting Dr. Chi's qualifications to his putative employer, Loyola and Dr. Nagda engaged in extreme and outrageous behavior . . . ."). In his response to the motion to dismiss, Dr. Chi gives a more expansive description of his IIED claim, saying that it covers the entirety of his treatment at Loyola, as well as Dr. Nagda's statement. Defendants reply that all or nearly all of that conduct falls outside the statute of limitations.

A plaintiff cannot amend his complaint via a response to a motion to dismiss, so the Court will deal with the claim the way that Dr. Chi asserted it – as involving only Dr. Nagda's October 1, 2009 statement. That conduct, standing alone, cannot be characterized as "extreme and outrageous conduct," as required to establish liability for

4

IIED.  *See Doe v. Calumet City*, 161 Ill. 2d 374, 392, 641 N.E.2d 498, 506 (1994).  It was a plain vanilla statement on a form giving Dr. Nagda's evaluation of Dr. Chi, and, read in context, it had an innocent construction.  It did not amount to outrageous or extreme conduct. *See, e.g., Heying v. Simonaitis*, 126 Ill. App. 3d 157, 166, 466 N.E.2d 1137, 1144 (1984) ("Personality conflicts, questioning of job performance and job transfers, whether for disciplinary or management purposes, are unavoidable aspects of employment" and are not actionable as IIED).

**2.     NIED claim**

To succeed on a claim for NIED under Illinois law, a plaintiff must show that the defendant owed the plaintiff a duty and breached that duty, proximately causing the plaintiff injury.  *See, e.g., Corgan v. Muehling*, 143 Ill. 2d 296, 306, 574 N.E.2d 602, 606 (1991).  Defendants argue that Dr. Chi has not alleged any legally cognizable duty.

The existence of a duty is a question of law.  *See, e.g., Widlowski v. Durkee Foods, Div. of SCM Corp.*, 138 Ill. 2d 369, 373, 562 N.E.2d 967, 968 (1990).  In his response to the motion, Dr. Chi argues that defendants owed him a duty to treat him fairly.  Dr. Chi cites no authority for this point, and the Court is aware of none.  The claim is legally deficient.

**3.     Tortious interference claim**

Dr. Chi's claim for tortious interference with prospective advantage requires him to prove that he had a reasonable expectancy of entering into a valid business relationship, the defendant knew of this expectancy, the defendant intentionally and unjustifiably interfered and induced or caused a breach of termination of the

expectancy, and he (Dr. Chi) was damaged as a result.  *See Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 406-07, 667 N.E.2d 1296, 1299 (1996).

Dr. Chi alleges not that his employment with UMC was terminated but that UMC cut his guarantee from two years to one.  Compl. ¶ 37.  He does not allege, however, that he was actually terminated after one year.  In fact, based on the complaint's allegations, Dr. Chi is now well into his second year of employment, and nothing he has filed with the Court hints that he has lost his job.  Additionally, Dr. Chi does not allege that defendants had any awareness of any future expectancy on Dr. Chi's part; indeed, he alleges that at the time of Dr. Nagda's October 1 statement, he (Dr. Chi) was already working at UMC.  For these reasons, Dr. Chi's tortious interference claim fails.

**4.      Defamation claim**

Defendants make several arguments regarding Dr. Chi's defamation claim, but the Court will address only one – their argument that Dr. Nagda's October 1 statement is not actionable because it is reasonably susceptible of an innocent (i.e. non-defamatory) construction.  Even though the Court is required to construe the complaint liberally and make reasonable inferences in plaintiff's favor, "that does not mean that the court must take the plaintiff's *interpretation* of the allegedly defamatory words at face value."  *Lott v. Levitt*, 556 F.3d 564, 569 (7th Cir. 2009) (emphasis in original).  "Figuring out the meaning of a statement and whether it is reasonably susceptible to an innocent construction is a question of law for the courts to resolve."  *Id.*

That question is a relatively easy one on the present record.  Dr. Chi's allegation is that read in context, Dr. Nagda's check-off on the October 1 form that "I cannot

recommend him/her" box amounts to a statement that Dr. Chi was not qualified and competent. But in the form he submitted on September 30, Dr. Nagda specifically *confirmed* Dr. Chi's ability to practice competently and independently. In the form he submitted on October 1, Dr. Nagda specifically cross-referenced the September 30 form. In that form, as discussed earlier, Dr. Nagda said that Dr. Chi had "difficulties in interpersonal communication" and that although he had improved, "he may encounter difficulties in the future." Defs.' Mem., Ex. C. This context – which is directly linked to Dr. Nagda's purportedly actionable October 1 statement – establishes that the statement is reasonably susceptible of a non-defamatory construction, namely that Dr. Nagda's concerns involved Dr. Chi's interpersonal skills. Thus there is a reasonable, non-defamatory construction of the allegedly defamatory statement.

This analysis most certainly does not, as Dr. Chi contends, involve "strain[ing] to find unnatural but possibly innocent meanings . . . where such a construction is clearly unreasonable," which is inappropriate. *See Chapski v. Copley Press*, 92 Ill. 2d 344, 350, 442 N.E.2d 195, 198 (1982). Rather, the Court is simply reading the statement in its context, which is what the law requires.

5. **A postscript**

When the Court set the briefing schedule on the present motion, it also set a ruling date of February 17, 2011.

In moving to dismiss, defendants contended that Illinois law governed Dr. Chi's claims. Dr. Chi did not contest this in his response to the motion. Indeed, he relied on Illinois law in making his arguments. On February 10, after the motion to dismiss was fully briefed, Dr. Chi filed a motion for leave to supplement his response and noticed it

7

for presentment on February 17, the scheduled ruling date. The Court did not see the motion until February 15, after it had come to a decision on the present motion and was well into the process of reducing it to writing.

In the proposed supplemental response, Dr. Chi argues for the first time that Arizona law governs his claims. In his supplemental submission, however, he does not contend that Arizona law differs from Illinois law on any of the points the Court has addressed in this memorandum opinion. Rather, he confines his legal arguments to a point the Court has not reached, involving the applicability of the Illinois Citizen Participation Act.

Given these circumstances, the Court considers Dr. Chi to have forfeited the argument that Arizona law differs from Illinois law in some meaningful respect that is relevant to the rulings the Court makes in this memorandum opinion. If Dr. Chi believes otherwise, he should be prepared to show, in connection with any motion to file an amended complaint, that Arizona law in fact differs from Illinois law regarding one or more of those rulings.

**Conclusion**

For the reasons stated above, the Court grants defendant's motion to dismiss [docket no. 10]. The Court terminates as moot plaintiff's motion for leave to supplement his response [docket no. 20] and his motion for discovery and a hearing [docket no. 22], which concern points the Court was not required to reach to decide the motion to dismiss. The status hearing and ruling date of February 17, 2011 is vacated. The Court will convert the dismissal of the complaint into a final judgment on the merits unless plaintiff presents for hearing, on or before March 10, 2011, a motion for leave to

amend including a proposed amended complaint that states at least one legally viable claim. The case is set for a status hearing on March 10, 2011 at 9:30 a.m.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: February 16, 2011