**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **DR. ALEXANDER CHI,** ) | |
| ) | |
|          **Plaintiff,** ) | |
| ) | |
|   **vs.** ) | **Case No. 10 C 6292** |
| ) | |
| **LOYOLA UNIVERSITY MEDICAL** ) | |
| **CENTER and DR. SUNEEL NAGDA,** ) | |
| ) | |
|        **Defendants.** ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Dr. Alexander Chi has sued Loyola University Medical Center ("Loyola") and Dr. Suneel Nagda asserting claims for defamation, tortious interference with prospective economic advantage, and intentional infliction of emotional distress ("IIED"). The Court previously granted defendants' motion to dismiss Dr. Chi's second amended complaint. *Chi v. Loyola Univ. Med. Ctr.,* No. 10 C 6292, 2011 WL 687334 (N.D. Ill. Feb. 16, 2011). The Court assumes familiarity with that decision. Dr. Chi has filed a third amended complaint which defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the Court grants the motion in part and denies it in part.

**Discussion**

**1.    Choice of law**

The parties dispute what law applies to Dr. Chi's claims. Defendants argue that Illinois law governs all of Dr. Chi's claims. In particular, defendants assert that the

Illinois Citizen Participation Act ("ICPA"), 735 ILCS 110/15, requires dismissal of the claims. Dr. Chi counters that Arizona law governs his defamation claim and that the ICPA does not apply.

A district court sitting in diversity applies the choice-of-law rules of the state in which the court sits. *Malone v. Corr. Corp. Of Am.*, 553 F.3d 540, 543 (7th Cir. 2009). In Illinois, courts use the "most significant contacts" test in resolving conflicts of law. *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009). In the tort context, "'the law of the place of injury controls unless Illinois has a more significant relationship with the occurrence and with the parties.'" *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 916 (7th Cir. 2006) (quoting *Esser v. McIntyre*, 169 Ill. 2d 292, 298, 661 N.E.2d 1138, 1141 (1996)).

In assessing which state has the strongest relationship with the occurrence and the parties, the Court looks to four factors: "'(1) where the injury occurred; (2) where the injury-causing conduct occurred; (3) the domicile of the parties; and (4) where the relationship of the parties is centered.'" *Id.* The Court does not merely count contacts but rather weighs them in light of the general principles outlined in section 6 of the Restatement (Second) of Conflict of Laws, which are the relevant policies of the forum; the relevant policies of the interested states; and those states' relevant interests in determining the particular issue; and the basic policies underlying the particular field of law. *See Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 169-70, 879 N.E.2d 893, 906-07 (2007).

Illinois also follows the doctrine of *dépeçage*, "which refers to the process of

cutting up a case into individual issues, each subject to a separate choice-of-law analysis." *Townsend*, 227 Ill. 2d at 161, 879 N.E.2d at 901. In determining what law applies to Dr. Chi's claims, the Court will give each issue "'separate consideration if it is one which would be resolved differently under the local law rule of two or more of the potentially interested states.'" *Id.* (quoting Restatement (Second) of Conflict of Laws § 145, cmt. d, at 417 (1971)).

### a. Defamation claim

The parties dispute whether Arizona or Illinois law applies to the defamation claim. Dr. Chi asserts that "there are important differences between the law of Arizona and the law of Illinois on the issue of defamation." Pl.'s Resp. in Opp. to Defs.' Mot. to Dismiss at 10 ("Pl.'s Resp."). In particular, the parties appear to agree that Illinois, but not Arizona, applies the "innocent construction rule" to defamation claims. *See Tuite v. Coritt*, 224 Ill. 2d 490, 502, 866 N.E.2d 114, 121 (2006). Defendants seek dismissal of Dr. Chi's defamation claim based on this rule, among other arguments.

Dr. Nagda drafted the allegedly defamatory statement in Illinois and sent it to University Medical Center ("UMC") in Arizona, where UMC officials read it, allegedly causing Dr. Chi injury in that state. As such, the first factor from section 145 of the Restatement favors application of Arizona law. For the same reason, Arizona law is presumptively applicable to the claim. *See Kamelgard v. Macura*, 585 F.3d 334, 341 (7th Cir. 2009) (noting Illinois's presumption in favor of applying the law of the place of injury). Though defendants are apparently Illinois citizens, Dr. Chi is a citizen of Arizona. The Court thus considers the third factor to be neutral. The second factor

cuts both ways:  Dr. Nagda prepared the allegedly defamatory statement in Illinois but knowingly sent it to Arizona.  The fourth factor favors the application of Illinois law given that the parties' relationship was centered in Illinois, where Dr. Chi served as a medical resident at Loyola.

After weighing these factors in light of the principles outlined in the Restatement, the Court concludes that Illinois's relationship with this case is not strong enough to rebut the presumption in favor of applying the law of Arizona, the place of the alleged injury.  The Illinois Supreme Court has instructed courts not to take such presumptions lightly.  *See Townsend*, 227 Ill. 2d at 162, 879 N.E.2d at 902 (noting that courts and practitioners "have undervalued the specific presumptive rules" applicable to choice-of-law questions).  Moreover, as comment e to section 145 of the Restatement notes, the location of the injury "plays an important role in the selection of the state of the applicable law" when "the injury occurred in a single, clearly ascertainable state." Restatement (Second) of Conflict of Laws § 145 cmt. e (1971).  That is the case here. Dr. Chi's alleged injury occurred in Arizona, the state where Dr. Nagda's allegedly defamatory statement was published and where Dr. Chi is currently employed as a physician.

To be sure, the Restatement does identify certain situations in which the place of injury is less important, including "when the place of injury can be said to be fortuitous or when for other reasons it bears little relation to the occurrence and the parties with respect to the particular issue," or when "the defendant had little, or no, reason to foresee that his act would result in injury in the particular state."  *Id.*  But these circumstances are not present here, as Dr. Chi alleges that Dr. Nagda purposefully sent

4

his allegedly defamatory statement to UMC in Arizona. As such, there was nothing fortuitous or unforeseeable about the fact that Dr. Chi's alleged injury occurred in Arizona. To the contrary, the effects of Dr. Nagda's statement likely would be felt only in Arizona, since that is where Dr. Chi's medical practice is located.

In sum, Arizona has a strong interest in protecting its citizens from conduct directed at them in Arizona and causing injury there. The Court thus gives great weight to the fact that Dr. Chi's alleged injury occurred in Arizona and sees no compelling reason to give increased weight to the location of initiation of the conduct causing the injury or the place where the parties' relationship was centered. Accordingly, the Court concludes that Arizona law governs Dr. Chi's defamation claim.

### b. Tortious interference and IIED claims

The parties have not addressed whether Arizona law also governs Dr. Chi's tortious interference and IIED claims. The states' laws on these subjects do not materially differ. *Compare Neonatology Assocs. v. Phoenix Perinatal Assocs.*, 216 Ariz. 185, 187, 164 P.3d 691, 693 (Ariz. App. 2007) (tortious interference), *and Citizen Publ'g Co. v. Miller*, 210 Ariz. 513, 516, 115 P.3d 107, 110 (2005) (IIED), *with Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 406-07, 667 N.E.2d 1296, 1299 (1996) (tortious interference), *and Cangemi v. Advocate South Suburban Hosp.*, 364 Ill. App. 3d 446, 470, 845 N.E.2d 792, 813 (2006) (IIED). For this reason, and because Dr. Chi has forfeited any contention that Arizona law governs these claims, the Court will apply Illinois law. *See Jean v. Dugan*, 20 F.3d 255, 260 (7th Cir. 1994) ("Where there is no disagreement among the contact states, the law of the forum state applies").

### c.      ICPA defense

Finally, defendants argue that Dr. Chi's claims were filed as part of a so-called "strategic lawsuit against public participation" ("SLAPP") and should be dismissed based on Illinois's anti-SLAPP statute, the ICPA.  Dr. Chi responds that Arizona law applies to this issue and therefore the ICPA does not apply.

Arizona also has an anti-SLAPP statute.  *See* A.R.S. § 12-752.  This law, however, does not "[c]reate any privileges or immunities or otherwise affect, limit or preclude any privileges or immunities authorized by law."  A.R.S. § 12-752(E)(3).  By contrast, the ICPA creates conditional immunity for "[a]cts in furtherance of the constitutional rights to petition, speech, association, and participation in government." 735 ILCS 110/15.  Because the two laws differ in this critical respect, the Court must determine which state's statute applies.

The fact that Arizona law governs Dr. Chi's defamation claim is not dispositive of this question.  "The issue of whether a statement is defamatory or invades the right to privacy is distinct from the issue of whether that statement is privileged." *Global Relief Found. v. New York Times Co.*, No. 01 C 8821, 2002 WL 31045394, at *10 (N.D. Ill. Sept. 11, 2002); *see also Vantassell-Matin v. Nelson*, 741 F. Supp. 698, 704 (N.D. Ill. 1990) (noting in choice-of-law context that "the threshold question [of defamation] and the defenses are different issues and call for different analyses").

Though the place of injury is a central factor in determining what law governs a tort claim, in the anti-SLAPP context this factor is less important.  The purpose behind an anti-SLAPP law is to encourage the exercise of free speech—indeed, Illinois's stated

policy in enacting the ICPA was to "encourage[] and safeguard[] with great diligence" the "constitutional rights of citizens and organizations to be involved and participate freely in the process of government."  735 ILCS 110/5.  In light of this policy goal, the place where the allegedly tortious speech took place and the domicile of the speaker are central to the choice-of-law analysis on this issue.  A state has a strong interest in having its own anti-SLAPP law applied to the speech of its own citizens, at least when, as in this case, the speech initiated within the state's borders.

Defendants are citizens of Illinois, and their allegedly defamatory speech originated here.  Illinois thus has a strong interest in having its own anti-SLAPP statute applied to the issue of whether defendants are immune from liability for defamation.  *Cf. Global Relief*, 2002 WL 31045394, at *11 (applying Illinois law to defamation claim, but California law to anti-SLAPP defense:  "California has a great interest in determining how much protection to give California speakers . . . .  Thus California law has the most significant relationship and the law of California will apply to defenses to defamation").  The Court therefore will apply Illinois law, and specifically the ICPA, to the question of whether defendants are immune from liability on Dr. Chi's claims, assuming that he is able to state a claim on any of the counts in his complaint.

**2.      Failure to state a claim**

Having determined that Arizona law applies to Dr. Chi's defamation claim and Illinois law applies to his remaining claims, the Court next addresses whether Dr. Chi's complaint states a claim under Rule 12(b)(6).  In doing so, the Court accepts the facts stated in Chi's complaint as true and draws reasonable inferences in his favor.  *Parish*

*v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010).  Though a complaint need not

contain "detailed factual allegations, . . . a formulaic recitation of the elements of a

cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Rather, the complaint must contain "enough facts to state a claim to relief that is

plausible on its face."  *Id.* at 570.  A complaint fails to state a claim "where the well-

pleaded facts do not permit the court to infer more than the mere possibility of

misconduct."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

### a.    Defamation claim

In count one, Dr. Chi contends that Dr. Nagda's written statement that he "cannot

recommend" Dr. Chi was defamatory.  Defendants argue that Dr. Nagda's remark was

a non-actionable statement of opinion.  "'To be defamatory, a publication must be false

and must bring the defamed person into disrepute, contempt, or ridicule, or must

impeach plaintiff's honesty, integrity, virtue, or reputation.'"  *Turner v. Devlin*, 174 Ariz.

201, 203-204, 848 P.2d 286, 288-89 (1993) (quoting *Godbehere v. Phoenix*

*Newspapers, Inc.*, 162 Ariz. 335, 341, 783 P.2d 781, 787 (1989)).  "[W]hether, under all

of the circumstances, a statement is capable of bearing a defamatory meaning" is a

question of law for the Court to decide.  *Yetman v. English*, 168 Ariz. 71, 79 81 P.2d

323, 331 (1991).

The parties disagree over what legal standard the Court should apply to this

issue.  Defendants argue that a statement must be "provable as false" to give rise to a

defamation claim.  Defs.' Mem. in Supp. of Mot. to Dismiss at 7 (citing *Milkovich v.*

*Lorain Journal Co.*, 497 U.S. 1, 19-20 (1990)) ("Defs.' Mem.").  Dr. Chi counters that the

"provable as false" standard applies only to statements on matters of public concern and that the proper standard is whether the statement merely "impl[ies] a basis in fact." Pl.'s Resp. at 10 (citing *Yetman*, 168 Ariz. 71, 81 P.2d 323). The parties appear to agree that this case does not involve speech relating to a public figure or a matter of public concern.

The Court concludes that the "provable as false" standard does not govern Dr. Chi's defamation claim. As the Arizona Supreme Court has recognized, *Milkovich* established this standard for statements that relate to a matter of public concern. *Turner*, 174 Ariz. at 205, 848 P.2d at 290 ("A statement *regarding matters of public concern* must be provable as false before a defamation action can lie") (emphasis added); *see also Milkovich*, 497 U.S. at 19 (holding that "a statement *on matters of public concern* must be provable as false before there can be liability under state defamation law, at least in situations, like the present, where a media defendant is involved") (emphasis added). The Supreme Court in *Milkovich* expressly reserved judgment on whether this standard applies to non-media defendants. *Id.* at 19 n.6.

The Court is unaware of any Arizona Supreme Court case adopting this standard for defamation claims outside of the public figure/public concern context. "If the state's highest court has yet to rule on an issue, decisions of the state appellate courts control, unless there are persuasive indications that the state supreme court would decide the issue differently." *Thomas v. H & R Block E. Enters., Inc.*, 630 F.3d 659, 663 (7th Cir. 2011) (internal quotation marks omitted). The Arizona court of appeals does not appear to have explicitly adopted defendants' proposed standard. In fact, the court

recently recognized a lack of clarity as to this standard's applicability outside of the "public concern" context. *See Dube v. Likins*, 216 Ariz. 406, 419, 167 P.3d 93, 106 n.4 (Ariz. App. 2007) (quoting 2 Dan B. Dobbs, The Law of Torts § 420, at 1186 (2001 & Supp. 2006) ("[W]e need not decide whether a private figure must show that allegedly defamatory statements not involving matters of public concern are provable as false. *It is not clear whether this requirement applies to statements 'not involving public issues* (or mere invective or hyperbole)'") (emphasis added).

By contrast, the court in *Dube* acknowledged that Dr. Chi's proposed standard is the one that governs in the private defamation context. *Dube*, 216 Ariz. at 420, 167 P.3d at 107 ("The requirement that rhetoric or epithet cannot be actionable unless it implies a factual assertion, *unlike the requirement that a statement be provable as false*, appears to apply even to cases in which the matter is not one of public concern") (emphasis added). This position finds support elsewhere. *See, e.g.,* Restatement (Second) of Torts § 566 ("A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable *only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion*") (emphasis added).

Defendants cite the Arizona Supreme Court's decision in *Turner* in arguing that the "provable as false" standard applies. But in that case, the court expressly found that the defendant's allegedly defamatory comments involved matters of public concern and "therefore[] must be provable as false before a defamation action can lie." *Turner*, 174 Ariz. at 205, 848 P.2d at 290. In a footnote, the court acknowledged that it was

extending the rule from *Milkovich* beyond the media context but concluded that doing so was appropriate "when the plaintiff is a public official and the speech is of public concern." *Id.* at 205, 848 P.2d at 290 n.8. Notably, the court later recognized that Dr. Chi's proposed standard applies to statements of opinion. *Id.* at 208, 848 P.2d at 293 (citing *Milkovich*, 497 U.S. at 18-19) ("We recognize, of course, that statements of opinion are actionable when they 'imply a false assertion of fact.'").

For these reasons, the Court concludes that the "provable as false" standard does not apply to the Court's determination of whether Dr. Nagda's statement is actionable under Arizona law. The Court will therefore assess whether his statement implies an assertion of fact. In doing so, the Court will not "stop at literalism," but will also "consider the impression created by the words used as well as the general tenor of the expression, from the point of view of the reasonable person." *Yetman*, 168 Ariz. at 76, 811 P.2d at 328 (internal quotation marks and emphasis omitted).

Dr. Chi argues that Dr. Nagda's statement that he "cannot recommend" Dr. Chi "can be reasonably interpreted to constitute an assessment of Dr. Chi's skills as a physician." Pl.'s Resp. at 11. The Court agrees. Dr. Nagda supervised Dr. Chi during his residency at Loyola and made his statement to UMC in that capacity as part of an "overall evaluation" of Dr. Chi. Defs.' Mem., Ex. C at 3.[1] Moreover, Dr. Nagda's

---

[1] In his complaint, Dr. Chi specifically referenced the forms submitted to UMC by Dr. Nagda. Because defendants attached these documents to their motion to dismiss, the Court may consider their contents without converting the motion to dismiss into a motion for summary judgment. *See Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 731 n.2 (7th Cir. 2005) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim").

statement was not simply that he could not recommend Dr. Chi. He also attached and referenced a separate form on which he wrote that Dr. Chi "had difficulties in interpersonal communication throughout his residency." *Id.* at 2. These comments can be reasonably understood as implying a statement of fact about Dr. Chi's possession of a trait that is important to a physician's competency—namely, strong interpersonal communication skills. The Court therefore declines to dismiss count one.

Defendants have also argued that Dr. Chi's defamation claim should be dismissed because Dr. Nagda's statement is reasonably susceptible of an innocent construction. As discussed earlier, however, Arizona's law on defamation applies to this claim, and the parties agree that Arizona does not follow the innocent construction rule. The Court is unaware of any authority suggesting otherwise. Accordingly, this argument does not warrant dismissal of Dr. Chi's defamation claim.

**b.      Tortious interference claim**

In count two, Dr. Chi contends that defendants tortiously interfered with his business relationship with UMC and thereby caused him to suffer monetary, emotional and reputational injuries. Defendants counter that Dr. Chi's allegations, taken as true, do not satisfy the elements of tortious interference.

To state a claim for tortious interference with prospective economic advantage under Illinois law, a plaintiff must allege "'(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from

the defendant's interference.'" *Evans v. City of Chicago*, 434 F.3d 916, 929 (7th Cir. 2006) (quoting *Anderson*, 171 Ill. 2d at 406-407, 667 N.E.2d at 1299).

Dr. Chi alleges that he had accepted a position with UMC that included a guarantee of two years' employment. He further asserts that defendants' interference "reduced the term of the credentials required to work there by a year" and limited his practice at UMC in various other ways. Third Am. Compl. ¶ 56-58. He does not allege, however, that defendants were aware of his expectation of two years' guaranteed employment. Rather, he asserts that defendants were aware only of his expectancy of "commencing employment with [UMC]." *Id.* ¶ 55.

Dr. Chi argues that defendants need not have been specifically aware of the two-year guarantee, but that is the expectancy he alleged in his complaint. Even assuming that Dr. Chi's expectancy was merely commencing employment with UMC and not the two-year guarantee specifically, he has not alleged that his employment was terminated as a result of defendants' actions. In fact, Dr. Chi's complaint makes clear that he continued to work at UMC despite Dr. Nagda's statement. Accordingly, Dr. Chi has failed to state a claim for tortious interference with prospective economic advantage.

### c.    IIED claim

Finally, Dr. Chi alleges in count three that defendants' course of conduct throughout his residency at Loyola, culminating with Dr. Nagda's statement to UMC, caused him extreme emotional distress. Defendants argue that Dr. Chi has failed to allege conduct that is sufficiently "outrageous" to state a claim for IIED.

The Illinois Supreme Court has "set forth three requirements necessary to

demonstrate the intentional infliction of emotional distress:  (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress[;] and (3) the conduct must in fact cause severe emotional distress."  *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (citing *McGrath v. Fahey*, 126 Ill. 2d 78, 86, 533 N.E.2d 806, 809 (1988)).  "[T]he tort does not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialties.'" *McGrath*, 126 Ill. 2d at 86, 533 N.E.2d at 809 (quoting Restatement (Second) of Torts § 46, cmt. d, at 73 (1965)).  Rather, "the conduct must go beyond all bounds of decency and be considered intolerable in a civilized community."  *Honaker*, 256 F.3d at 490.

Dr. Chi alleges that his superiors and other Loyola employees targeted him for mistreatment in a number of different ways.  He alleges that his co-workers made racial slurs in his presence; spread false rumors about him; falsely accused him of mistakes and gossiped about him and his mental health; and did not stop doing these things despite Dr. Chi's complaints to various supervising authorities at Loyola.  It is only under two circumstances, however, that "a co-employee's intentional tort is attributable to the employer:  (1) where the employer specifically commands or expressly authorizes the co-employee to commit the intentional tort, and (2) where the co-employee acts as the alter ego of the employer."  *Whitehead v. AM Int'l, Inc.*, 860 F. Supp. 1280, 1290 (N.D. Ill. 1994) (citing *Meerbrey v. Marshall Fields & Co.*, 139 Ill. 2d 455, 464, 564 N.E.2d 1222, 1226 (1990)).  Though Dr. Chi alleges that he reported some of this misconduct

without avail, he does not allege that defendants commanded or authorized their employees to mistreat Dr. Chi or that the employees did so as defendants' alter egos.

Dr. Chi's remaining allegations concern the actions of his superiors, who were directors of his residency program and department at Loyola. He alleges that these individuals placed him on academic probation without identifying any specific deficiencies; reprimanded him undeservedly and hypercritically on various occasions; admitted to trying to intimidate and scare him; and interfered with his professional development by unfairly denying him the opportunity to attend certain conferences and failing to follow through on filing paperwork with Illinois's medical licensing board.

Though these allegations are unsettling and reflective of an unpleasant work environment, this does not render them actionable. In fact, courts "often hesitate to find that a plaintiff has stated a claim for intentional infliction of emotional distress in employment situations" in light of their "concern that everyday job stresses should not give rise to a cause of action for" IIED. *Vickers v. Abbot Labs.*, 308 Ill. App. 3d 393, 410, 719 N.E.2d 1101, 1115 (1999). As such, courts in Illinois have dismissed employees' IIED claims under circumstances arguably more abusive than those presented by Dr. Chi. For example, in *Welsh v. Commonwealth Edison Co.*, 306 Ill. App. 3d 148, 713 N.E.2d 679 (1999), plaintiffs alleged that "they were demoted, transferred, forced to perform 'demeaning' and 'humiliating' tasks, harassed, intimidated, and threatened with termination" in retaliation for having expressed concerns about the safety conditions at their workplace. *Id.* at 153, 713 N.E.2d at 684. The court recognized that these actions, though perhaps even violative of federal law, were not "of such an outrageous character that no reasonable person could be

expected to endure it." *Id.*

The Court reaches a similar conclusion with respect to Dr. Chi's claims. Dr. Chi's allegations would, if proven, demonstrate that he was subjected to an unfair and perhaps even abusive work environment, but they are not so extreme and outrageous that they exceed all bounds of human decency. For this reason, the Court concludes that count three fails to state a claim for IIED.

### 3. Dismissal based on the ICPA

Defendants contend that Dr. Chi's defamation claim is subject to dismissal because Dr. Nagda's statement to UMC is protected by the ICPA. Though Dr. Chi's current response brief does not address the ICPA, he argued in his response to defendants' first motion to dismiss that the ICPA does not preclude his claim because (1) it is a procedural statute and is thus trumped by the Federal Rules of Civil Procedure under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), and (2) Dr. Nagda's statements were not "genuinely aimed at procuring [a] favorable government action, result, or outcome," as required by the ICPA. 735 ILCS 110/15.

### a. *Erie* issue

The Court first addresses Dr. Chi's argument that the ICPA is procedural and thus inapplicable in federal court. Generally speaking, a federal court sitting in diversity applies state substantive law and federal procedural law. *See Hanna v. Plumer*, 380 U.S. 460, 465 (1965). Whether the ICPA is considered substantive or procedural thus bears directly on whether it bars Dr. Chi's claim. "A substantive law is one motivated by a desire to influence conduct outside the litigation process, such as a desire to deter

accidents, while a procedural law is one motivated by a desire to reduce the cost or increase the accuracy of the litigation process, regardless of the substantive basis of the particular litigation."  *Gacek v. Am. Airlines, Inc.*, 614 F.3d 298, 302 (7th Cir. 2010).

This argument presents an issue of first impression, as no court appears to have considered whether the ICPA is "procedural" for *Erie* purposes.  The Court concludes, however, that the ICPA provisions at issue here are substantive and thus applicable in federal court.  Though the ICPA is located in the civil procedure chapter of the Illinois Compiled Statutes, its operative provisions are not merely procedural in nature. Specifically, the ICPA created a new category of conditional legal immunity against claims premised on a person's "[a]cts in furtherance of" his First Amendment rights. 735 ILCS 110/15.  It also provides for a mandatory award of reasonable attorney's fees and costs to "a moving party who prevails in a motion under th[e] Act."  735 ILCS 110/25.

These portions of the ICPA are plainly meant to affect conduct outside of the litigation process, such as a person's decision to exercise his First Amendment rights without fear of retaliation.  In fact, the ICPA itself makes clear that it is intended to promote free speech, not merely to increase efficiency in litigation.  *See* 735 ILCS 110/5 (noting that the "purpose of this Act" is, in part, "to protect and encourage public participation in government to the maximum extent permitted by law").  Other courts have reached the same result when considering similar anti-SLAPP provisions enacted by other states.  *See, e.g., Containment Techs. Grp., Inc. v. Am. Soc'y of Health Sys. Pharmacists*, No. 07-cv-0997-DFH-TAB, 2009 WL 838549, at *8 (S.D. Ind. Mar. 26, 2009) (holding that anti-SLAPP law provisions "provid[ing] a complete defense to

defamation and . . . the remedy of attorney fees" were "substantive provisions of Indiana law that govern in this diversity jurisdiction case"); *Kearney v. Foley and Lardner*, 553 F. Supp. 2d 1178, 1182 (S.D. Cal. 2008) ("Because attorneys' fees are mandatory and therefore, a substantive right under the anti-SLAPP statute, the timing for filing a fee application is governed by California law rather than federal procedural law"). The Court therefore rejects Dr. Chi's argument that the ICPA is inapplicable on *Erie* grounds.

### b. "Favorable government action" issue

Dr. Chi also argued in his previous response brief that although UMC is a governmental entity, dismissal under the ICPA is not warranted because Dr. Nagda's statements were not genuinely aimed at procuring favorable government action.

As noted earlier, the ICPA creates only a conditional immunity for actions taken in furtherance of a party's First Amendment rights. Specifically, these acts "are immune from liability, regardless of intent or purpose, *except when not genuinely aimed at procuring favorable government action, result, or outcome*." 735 ILCS 110/15 (emphasis added). The statute further provides that a responding party may avoid dismissal if "the court finds that the responding party has produced clear and convincing evidence that the acts of the moving party are not immunized from, or are not in furtherance of acts immunized from, liability by this Act." 735 ILCS 110/20(c).

Though the Illinois Supreme Court does not appear to have addressed the standard to be applied in making this determination, the Illinois Appellate Court recently held that in enacting section 15 of the ICPA, the Illinois legislature intended to adopt the

18

"sham" exception to the *Noerr-Pennington* doctrine outlined in *City of Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365 (1991). *Sandholm v. Kuecker*, 405 Ill. App. 3d 835, 942 N.E.2d 544, 566 (2010). In applying this principle to the issue of whether a person intended to procure favorable government action within the meaning of the ICPA, the court in *Sandholm* concluded that a court must "first consider whether objective persons could have reasonably expected to procure a favorable government outcome" by way of the allegedly immunized act. *Id.* at 568. If so, then "the court need not consider the subjective intent of" the actor. *Id.* at 569. By contrast, "if the answer [to the first question] is no, then the court would consider whether [the actor's] subjective intent was not to achieve a government outcome that may interfere with plaintiff but rather to interfere with plaintiff by using the governmental process itself." *Id.*

Applying this standard to the present case, the Court concludes that Dr. Nagda's statements to UMC were not genuinely aimed at procuring favorable government action, as required by the ICPA under *Sandholm*. No objective person in Dr. Nagda's shoes could have reasonably expected to procure a favorable government outcome by filling out the forms he sent to UMC. These forms did not request any action on UMC's part, nor did they even contemplate a response from UMC. Rather, by completing them, Dr. Nagda merely shared his own experience working with Dr. Chi and provided an overall assessment of Dr. Chi based on that experience. He did so as Dr. Chi's former superior at Loyola, not as a citizen seeking a benefit or other favorable action from UMC or the government of Arizona.

Defendants have not suggested what favorable government action they may

have expected to receive as a consequence of Dr. Nagda sending these forms to UMC. By contrast, other cases applying the ICPA involved an effort by the moving party to obtain a favorable government action. *See, e.g., Shoreline Towers Condominium Assoc. v. Gassman*, 404 Ill. App. 3d 1013, 1022, 936 N.E.2d 1198, 1207 (2010) (administrative complaints and lawsuit filed by defendant regarding religious discrimination by condominium association constituted "acts of petition, speech, association and participation . . . in pursuit of a favorable government action"); *Sandholm*, 405 Ill. App. 3d 835, 942 N.E.2d at 570 (in lobbying school leaders to remove plaintiff as high school athletic director, defendants acted with aim of procuring favorable government action for purposes of the ICPA).

For these reasons, the Court concludes that Dr. Chi's complaint and the forms submitted by Dr. Nagda provide clear and convincing evidence that Dr. Nagda's statements to UMC were not genuinely aimed at procuring favorable government action. The ICPA therefore does not warrant dismissal of Dr. Chi's defamation claim. Because the Court has dismissed Dr. Chi's other claims under Rule 12(b)(6), it need not consider whether they are subject to dismissal under the ICPA.

## Conclusion

For the reasons stated above, the Court grants defendants' motion to dismiss plaintiff's third amended complaint in part and denies it in part [docket no. 32]. Counts two and three are dismissed for failure to state a claim. The Court denies the motion as to count one and directs defendants to answer that claim by no later than June 7, 2011. Rule 26(a)(1) disclosures are to be made by June 14, 2011. The case is set for a

status hearing on June 21, 2011 at 9:30 a.m. for the purpose of setting a discovery

schedule.  Counsel are directed to confer prior to that date so that they can propose a

schedule to the Court.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  May 24, 2011